# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GAELCO S.A. and GAELCO DARTS S.L.,        )
                                          )
        Plaintiffs,                       )
                                          )
        v.                                )    No. 16 C 10629
                                          )
ARACHNID 360, LLC,                        )    Judge Thomas M. Durkin
                                          )
        Defendant.                        )

## MEMORANDUM OPINION & ORDER

Plaintiffs Gaelco S.A. and Gaelco Darts S.L. (collectively, "Gaelco") sued defendant Arachnid 360, LLC ("Arachnid") for allegedly infringing Gaelco's patent covering a system and method for remotely refereeing dart games. Arachnid moves to dismiss Gaelco's complaint under Fed. R. Civ. P. 12(b)(6), arguing that Gaelco's asserted claims are not directed to patent-eligible subject matter pursuant to 35 U.S.C. § 101. R. 19. For the following reasons, the Court grants Arachnid's motion.

## Background

### A.    Gaelco's Patent

The Court accepts well-pleaded facts in Gaelco's complaint as true for purposes of deciding Arachnid's Rule 12(b)(6) motion to dismiss. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013). Gaelco S.A. is the assignee of U.S. Patent No. 7,361,083 (the "'083 patent"), and Gaelco Darts S.L. is the exclusive licensee of the technology disclosed in the '083 patent. R. 1 ¶ 6. The United States Patent and Trademark Office issued the '083 patent on April 22, 2008. *Id.* ¶ 7

The patent is titled "*Multimedia system and method for remote monitoring or refereeing in dart machines.*" *Id.* It "contains claims directed to a remote monitoring or referee system for one or more dart machines where at least one refereeing center receives multimedia and captured content of play information to determine whether at least one of the players complies with at least one condition of play." *Id.* ¶ 9.

The '083 patent's "Description of the Invention" section states, in part:

An object of the present invention is to provide a management system and method for amusement machines, located either in substantially the same location or at a remote location with respect to one another. The system and method is applicable to any type of amusement machines, whether sports machines (e.g., darts, etc.) or otherwise.

Another object the [sic] invention is to provide a method to manage the refereeing of the games played on amusement machines wherein a human or non-human referee can make decisions at a remote site. Monitoring or Refereeing may occur in real time or with a time delay, based, at least in part, on multimedia information captured from the amusement machines which may communicate over a network such as the Internet. Accordingly, the system and method enables game play to be monitored and refereed, cheating to be reduced and enhances fair competition in games and between players. . . .

[T]he multimedia information and other data may be transmitted over a network (e.g., a LAN, WAN, the Internet, a wireless network, a cellular network, etc.) to an appropriate receiving device (e.g., monitors, computers, speakers, etc.) at the refereeing center. . . .

[T]he system of this invention permits playing individual or team competitions on a global scale, wherein the games are played with efficient supervision of all incidents of play, as it includes the game environment in the system.

R. 1-1 cols. 2-4.

Claim 1 recites:

A remote monitoring or refereeing system for one or more dart machines comprising:

one or more dart machines, each of the one or more dart machines comprising:

> play components and means to capture multimedia information relating to conduct of play and performance of players using the one or more dart machines;
>
> at least one camera to capture the conduct of play; and
>
> means for transmitting the multimedia and captured conduct of play information, and

at least one refereeing center to receive multimedia and captured conduct of play information, to determine whether at least one of the players complies with at least one condition of play, either nearly instantaneously or with a time delay, and to transmit data including the determination as to whether at least one of the players complies with at least one condition of play to the one or more dart machines.

R. 1-1 col. 6.

Claim 10 recites:

A remote monitoring or refereeing method for dart machines, to be used in a system comprising:

> a plurality of dart machines communicating over a network, each of the plurality of dart machines comprising: play components, means for capturing data on performance of the players at the machines and image capturing means;
>
> means for transmitting the data captured from the dart machines to the communication network; and
>
> one or more refereeing centers for evaluating the data transmitted over the network and to enable refereeing of play substantially instantaneously or with a time delay;

the method comprising:

> capturing, if the player complies with certain conditions of play during the game play, a result of a portion of play and an image of the area of play and of the player;

3

> transmitting the result and the image to the one or more refereeing centers to be evaluated by a referee;
>
> enabling a decision by the referee as to whether the portion of play has been performed without infringing a rule of play;
>
> transmitting the decision via the network to corresponding dart machines according to a competition refereed; and
>
> displaying the decision on the corresponding dart machines according to the competition refereed.

*Id.* cols. 7-8.

Gaelco's additional asserted claims (claims 7, 9, 11, 12, 13, 14, and 19[1]) depend on either claim 1 or claim 10. *See* R. 21 at 4-5 (Gaelco's response brief quotes the language of "independent" claims 1 and 10 in full, and then explains that "[t]he other Asserted Claims are all dependent claims").

## B. Gaelco's Business

Gaelco sells dart machines called *Radikal Darts* that connect multiple dart boards together to allow players to compete over the internet. R. 1 ¶ 10. *Radikal Darts* machines are covered by the '083 patent because they include the claimed refereeing system allowing a referee to review a dart match for rule violations. *Id.*

## C. Gaelco's Infringement Complaint Against Arachnid

Gaelco brings a two-count complaint against Arachnid for infringement of the '083 patent. Count I alleges that Arachnid has directly infringed the '083 patent in violation of 35 U.S.C. § 271(a) by creating a remote monitoring or refereeing system

---

[1] In its opposition brief, Gaelco misstates what claims it asserts, omitting claim 12. *Compare* R. 21 at 2 *with* R. 1 ¶¶ 15, 24.

for dart machines marketed as *Arachnid Galaxy 3* without permission or license from Gaelco. *Id.* ¶¶ 12-19. Specifically, Gaelco alleges that *Galaxy 3* infringes claims 1, 7, 9, 10, 11, 13, 14, and 19 of the '083 patent. *Id.* ¶ 15. Count II alleges that Arachnid has induced infringement of the '083 patent in violation of 35 U.S.C. § 271(b) by configuring its *Galaxy 3* machines such that operators who use them perform methods that infringe at least claims 10-14 of the '083 patent. *Id.* ¶¶ 20-29.

## Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *E.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must give defendant "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann*, 707 F.3d at 877 (quoting *Iqbal*, 556 U.S. at 678). In applying this standard,

the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Whether a claim recites patent-eligible subject matter pursuant to 35 U.S.C. § 101 is an issue of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008). Patent eligibility under § 101 is therefore appropriately decided on a Rule 12(b)(6) motion prior to claim construction. *E.g.*, *Content Extraction & Transmission, LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (district court properly resolved Rule 12(b)(6) motion based on § 101 prior to claim construction); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-17 (Fed. Cir. 2014) (same); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (same). Courts use the claim interpretations most favorable to the patentee when entertaining a motion to dismiss based on § 101 prior to construing the claims. *Content Extraction*, 776 F.3d at 1349; *O2 Media, LLC v. Narrative Science, Inc.*, 149 F. Supp. 3d 984, 988 (N.D. Ill. 2016).

## Discussion

Section 101 of the Patent Act defines patentable subject matter broadly as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has recognized an "important implicit exception" to § 101's broad language: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (internal quotation marks omitted). The purpose of this exception is to prevent "[m]onopolization" of the "basic tools of

scientific and technological work," which, if allowed, "might tend to impede innovation more than . . . promote it, thereby thwarting the primary object of the patent laws." *Id.* (internal quotation marks omitted). "*Alice* and th[e] torrent of subsequent Federal Circuit cases" after *Alice* "holding process and method patents invalid teach that district courts should take Section 101 seriously, apply it early, and check the *bona fides* of the concept underlying the patent." *O2 Media*, 149 F. Supp. 3d at 990 (internal quotation marks omitted).

At the same time, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[I]n applying the § 101 exception," therefore, courts "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal quotation marks omitted). In doing so, courts "must be careful to avoid oversimplifying the claims." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016).

The Supreme Court in *Alice* reaffirmed a two-step process for courts to use in determining whether claims recite patent-eligible subject matter. The first step is to "determine whether the claims at issue are directed to a patent-ineligible concept." 134 S. Ct. at 2355. If the claims are directed to a patent-ineligible concept, courts proceed to the second step and "consider the elements of each claim both individually and as an ordered combination to determine whether the additional

elements transform the nature of the claim into a patent-eligible application." *Id.* (internal quotation marks omitted). "[T]he two stages involve overlapping scrutiny." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). "The first-stage inquiry . . . look[s] at the focus of the claims, their character as a whole, and the second-stage inquiry (where reached) . . . look[s] more precisely at what the claim elements add." *Id.* The Court considers each step in turn.

## A.     Step One

Arachnid maintains that the asserted claims are directed to a patent-ineligible abstract idea at step one. "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Thus, courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Id.*; *accord Berkheimer v. Hewlett-Packard Co.*, 224 F. Supp. 3d 635, 643 (N.D. Ill. 2016).

In the last several years, the Federal Circuit has found numerous claims relating to gaming and claims relating to monitoring to be directed to abstract ideas, including: (1) methods and systems of managing a game of bingo, *Planet Bingo, LLC v. VKGS, LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014); (2) systems and methods relating to pari-mutuel wagering on historical events, *RaceTech LLC v. Kentucky Downs, LLC*, 167 F. Supp. 3d 853, 861-62 (W.D. Kentucky 2016), *aff'd*, 676 F. App'x 1009 (Fed. Cir. 2017); (3) methods for conducting a wagering game, *In re Smith*, 815 F.3d 816, 817-19 (Fed. Cir. 2016); (4) methods and systems of real-

time monitoring of an electric power grid by collecting data from multiple sources, analyzing it, and displaying results, *Electric Power*, 830 F.3d at 1351-53; and (5) methods and systems of monitoring and tracking shipping containers, *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 414-15 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016).

Arachnid argues that like in these cases, Gaelco's claims for methods and systems of remotely monitoring or refereeing dart games are directed to an abstract idea. Arachnid relies in particular on the Federal Circuit's decision in *Electric Power*. The patents in that case claimed methods and systems for "performing real-time performance monitoring of an electric power grid." 830 F.3d at 1351. The court found that the claims "clearly focused on [a] combination of . . . abstract-idea processes"—namely, "collecting data from multiple sources, analyzing that data, and displaying the results." *Id.* at 1351-54. *Electric Power* has since been frequently cited for the proposition that claims focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis" are "directed to a patent-ineligible concept" for purposes of the step one inquiry. *Id.* at 1353; *see e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (citing *Electric Power* for this principle); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) (same); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055-56 (Fed. Cir. 2017) (same); *W. View Research, LLC v. Audi AG*, 685 F. App'x 923, 926 (Fed. Cir. 2017) (same).

Like the courts in *Electric Power* and progeny, this Court finds collecting information, analyzing it, and displaying results to be "abstract-idea processes" under *Alice*. *See Electric Power*, 830 F.3d at 1354. And the Court agrees with Arachnid that, although operating in a different context than the claims in *Electric Power*, "the focus of the claims" asserted here is on collecting information, analyzing the information, and displaying the results. *See id.* Specifically, independent claims 1 and 10 describe a system and method whereby a referee collects information (by viewing the dart competition), analyzes it (determining whether the players comply with a condition of play), and then displays a decision (about whether an infraction was committed). *See* R. 1-1 col. 6 (claim 1 recites a system comprising "at least one camera to capture the conduct of play," "at least one refereeing center to receive multimedia and captured conduct of play information, to determine whether at least one of the players complies with at least one condition of play, . . . and to transmit data including the determination . . . to the one or more dart machines"); *id.* cols. 7-8 (claim 10 recites "the method comprising: capturing, if the player complies with certain conditions of play," "transmitting the result and the image to the one or more refereeing centers," "enabling a decision by the referee as to whether the portion of play has been performed without infringing a rule of play," "transmitting the decision via the network to corresponding dart machines," and "displaying the decision").[2]

---

[2] Because the other asserted claims (claims 7, 9, 11, 12, 13, 14, and 19) undisputedly depend on either claim 1 or claim 10 and are linked to the same idea of methods and systems for remote monitoring or refereeing in dart machines, the

As this Court pointed out in oral argument (R. 29 at 13, 17), the same abstract idea processes—of remotely refereeing a game by collecting information, analyzing the information, and displaying results—are routinely employed in other areas, including professional hockey (reviewing contested goals in all NHL games at the review center in Toronto), baseball (reviewing challenged umpire calls for all MLB games at the review center in New York), and football (reviewing all questionable plays in the last two minutes of a game in the remote booth at the stadium where the game is played). Gaelco points out that the asserted claims in this case are not "directed to remote refereeing or gaming generally," but specifically to remote refereeing of dart games using dart machines. *See* R. 21 at 2. As the *Electric Power* court explained, however, the mere fact that claims are limited "to [a] particular technological environment"—in that case, "power-grid monitoring"—is "without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core." 830 F.3d at 1354.

As part of the step one inquiry, courts not only evaluate the nature of any abstract idea at issue, but also whether the asserted claims, considered as a whole,

---

Court does not consider the other asserted claims individually in this opinion. As the Federal Circuit has made clear, where claims are "substantially similar and linked to the same abstract idea," a claim-by-claim analysis is not necessary. *Content Extraction*, 776 F.3d at 1344; *see also, e.g.*, *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (claims that "require performance of the same basic process" "should rise or fall together"); *Ultramercial*, 772 F.3d at 712 (claims that all "suffer from the same infirmity as claim 1 . . . need not be considered further"); *Planet Bingo*, 576 F. App'x at 1007 (analyzing all asserted claims together where "the system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims").

assert a technological improvement. *See, e.g.*, *Enfish*, 822 F.3d at 1335 ("we find it relevant to ask whether the claims are directed to an improvement" to the technology at issue "at the first step of the *Alice* analysis"). Where the claims assert a specific technological improvement, courts have found that they are not directed to an abstract idea at step one. *See, e.g.*, *id.* at 1336 (claims "not directed to an abstract idea" where they were "directed to a specific improvement to the way computers operate").

By contrast, where claims do not recite "any particular assertedly inventive technology," but instead merely recite the use of existing technology as a tool to implement an abstract idea, courts have found the claims to be directed to an abstract idea at step one. *See, e.g.*, *Electric Power*, 830 F.3d at 1354 (distinguishing the claims in *Enfish*, which focused "on a specific improvement" in computer functioning, with the claims at issue, which focused "on certain independently abstract ideas that use computers as tools"); *TLI Commc'ns*, 823 F.3d at 612-13 (claim directed to an abstract idea where "the focus of the patentee and of the claims was not on an improved telephone unit or an improved server"); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) (claim directed to an abstract idea where it "does not recite an improvement to a particular computer technology"); *RecogniCorp, LLC v. Nintendo Co., LLC*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Unlike *Enfish*, claim 1 does not claim a software method that improves the functioning of a computer. It claims a 'process that qualifies as an

abstract idea for which computers are invoked merely as a tool.'") (quoting *Enfish*, 822 F.3d at 1336).

Like in *Electric Power*, *TLI Communications*, *EasyWeb*, and *RecogniCorp*, Gaelco's asserted claims do not recite any specific technological improvement. Indeed, when the Court asked Gaelco's counsel at oral argument whether he would "admit there's no . . . special machinery or technology that is involved" in Gaelco's asserted claims, counsel responded, as he had to, "True. That's true." R. 29 at 14. Gaelco's counsel then referred to certain cameras discussed in the patent specifications that could have special filters for use in poorly lit bars. *Id.* at 14-15. But he admitted that those cameras were already developed and manufactured—no part of them was invented by Gaelco. *Id.* at 15. Gaelco also does not claim to have invented a new refereeing technique; rather, the asserted claims refer to generic refereeing using "refereeing centers." *See* R. 1-1 cols. 6-8. And Gaelco does not claim to have invented any new system or method for transmission of information to and from the refereeing centers. To the contrary, the asserted claims rely on generic systems and methods for transmission, which are simply combined. *See id.*; *see also id.* cols. 2-3 ("the multimedia information and other data may be transmitted over a network (e.g., a LAN, WAN, the Internet, a wireless network, a cellular network, etc.) to an appropriate receiving device (e.g., monitors, computers, speakers, etc.) at the refereeing center").

Nor does the fact that refereeing occurs remotely qualify as a technological advancement that makes the claims non-abstract. *See, e.g.*, *Joao Control &*

*Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016) ("to solve a problem by allowing individuals to monitor their property remotely through the use of a computer network does not make the patents non-abstract") (collecting cases); *Intellectual Ventures I LLC v. Erie Indemnity Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) ("Remotely accessing and retrieving user-specified information is an age-old practice that existed well before the advent of computers and the Internet.").

The lack of a technological improvement is the key distinction between this case and the primary cases on which Gaelco relies. Gaelco compares the claims in this case to those in *Sonos, Inc. v. D&M Holdings, Inc.*, 2017 WL 971700 (D. Del. Mar. 13, 2017), where the court held that a "method for controlling a plurality of players" was not directed to an abstract idea. *Id.* at *4. But the claims in *Sonos* "present[ed] a specific improvement" and "a substantial improvement" "to the existing technology." *Id.* at *6. Namely, "the invention described in the patents allow[ed] for [ ] audio devices to be grouped and regrouped in real time simply using a user interface to select the desired members of the groups without the need for altering any hard wiring in the physical system." *Id.* The patent did not claim "a traditional speaker; rather, the claims [we]re directed to an improvement to the existing technology for grouping and controlling audio speakers." *Id.* "Furthermore, the claims [we]re grounded in a specific device—the player/zone player/playback device that is described in the patent." *Id.* Here, by contrast and as already explained, the asserted claims describe no specific technological improvement, and the asserted claims are not grounded in any specific device.

Another case on which Gaelco relies, *Trading Technologies International, Inc. v. CQG, Inc.*, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015), *aff'd*, 675 F. App'x 1001 (Fed. Cir. 2017), is distinguishable for the same reason. In *Trading Technologies*, the claims asserted a specific technological improvement to exiting "graphical user interface devices." *Id.* at *4. By contrast, again, the asserted claims in this case recite no specific improvement to existing technological devices.

Finally, Gaelco argues that the presence of a "physical system with multiple discrete hardware components" takes its asserted claims out of the abstract realm. R. 21 at 9-10. It points to claim 1's description of a remote monitoring system with at least (i) one or more dart machines, each with (ii) play components and (iii) means to capture multimedia information relating to conduct of play and performance of players; (iv) at least one camera; (v) means for transmitting the multimedia and captured conduct-of-play information; and (vi) a refereeing center. Dkt. 1-1 col. 6. It notes that claim 7 further recites a monitor on the dart machines, and claim 9 recites play components of one or more darts and a dartboard. *Id.* col. 7.

Gaelco is correct that the asserted claims recite "concrete tangible components." R. 21 at 10. As the Federal Circuit has explained, however, the fact that a claim "requires concrete tangible components" does not save it from being abstract where "the recited physical components merely provide a generic environment in which to carry out the abstract idea." *TLI Commc'ns*, 823 F.3d at 611-12; *accord Wireless Media*, 100 F. Supp. 3d at 414 (the fact that a "claim incorporates tangible components into the monitoring system . . . is not enough for

the system to become patent-eligible subject matter"). This is precisely the case here. All of the recited components are generic in nature and "merely provide a generic environment in which to carry out the abstract idea" of remote refereeing by collecting data, analyzing it, and displaying results. *See TLI Commc'ns*, 823 F.3d at 611-12.

Gaelco implicitly advocates for a rule that incorporating hardware components into a patent necessarily would make it non-abstract. As Arachnid points out, however, if this were the rule, then an author of claims could manipulate patent eligibility simply by drafting generic physical components into the claims. The Supreme Court has "long warned against" such interpretations of § 101. *Alice*, 134 S. Ct. at 2360 ("this Court has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art," meaning that reciting "a handful of generic computer components" does not make an abstract idea patent eligible) (internal quotation marks omitted).

This Court therefore joins the numerous other courts that have found claims to be directed to abstract ideas despite the fact that they required generic hardware components. *See, e.g., Planet Bingo*, 576 F. App'x at 1008 (claims required computer with a central processing unit, a memory, an input and output terminal, a printer, video screen, and a program enabling management of bingo game); *Electric Power*, 830 F.3d at 1352 (claims required an interconnected electric power grid); *TLI Commc'ns*, 823 F.3d at 611 (claim required telephone unit and server); *W. View Research*, 685 F. App'x at 925-27 (claim recited "computerized apparatus capable of

interactive information exchange with a human user via a microphone, one or more processors, a touch-screen input and display device, a speech synthesis apparatus with at least one speaker, an input apparatus, and a computer program") (internal quotation marks omitted); *Content Extraction*, 776 F.3d at 1347 (claims required a computer and a scanner); *Wireless Media*, 100 F. Supp. 3d at 414 (claims recited vehicles, optical scanners, and data input terminals at an entry point); *Joao Control*, 173 F. Supp. 3d at 720 (claims recited a video recording device, a camera, and a vehicle). Because the hardware components in these cases were generic in nature, they did not make the abstract ideas at issue any less abstract.

In sum, based on "their character as a whole," *Electric Power*, 830 F.3d at 1353, the Court finds the asserted claims to be directed to the abstract idea of remote refereeing by collecting data, analyzing it, and displaying results. The Court therefore proceeds to step two.

## B.    Step Two

At step two, the court "examine[s] the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted). An "inventive concept" is "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotation marks and alternations omitted). The second step requires consideration

of the elements of the claim "both individually and as an ordered combination." *Id.* at 2355 (internal quotation marks omitted).

Applying an abstract idea through use of conventional components in their conventional manner is not an inventive concept. In *Alice*, for example, the Supreme Court found that using generic computer hardware to obtain data, adjust account balances based on the data, and issue automated instructions is not an inventive concept. *Id.* at 2359-60. It explained that "[t]he introduction of a computer into the claims did not alter the analysis at *Mayo* step two" where "the process could be carried out in existing computers long in use," and "[t]aking the claim elements separately, the function performed by the computer at each step of the process is purely conventional." *Id.* at 2357, 2359 (internal quotation marks omitted).

Similarly in *Electric Power*, the Federal Circuit concluded that "the claims at issue do not require any nonconventional computer, network, or display components, or even a non-conventional and non-generic arrangement of known, conventional pieces, but merely call for performance of the claimed information collection, analysis, and display functions on a set of generic computer components," which was "insufficient to pass the test of an inventive concept in the application of an abstract idea." 830 F.3d at 1355 (internal quotation marks omitted). And in *Planet Bingo*, the Federal Circuit found that "a computer with a central processing unit, a memory, an input and output terminal, a printer, and in some cases a video screen, and a program enabling the steps of managing a game of bingo" were non-inventive components "used for the generic functions of storing, retrieving and

verifying a chosen set of bingo numbers." 576 F. App'x 1008-09 (quotation marks omitted); *see also Wireless Media*, 100 F. Supp. 3d at 415-16 (use of "a general purpose computer, general communication devices, and general vehicles" in their conventional manner is not an inventive concept); *Nextpoint, Inc. v. Hewlett-Packard Co.*, 227 F. Supp. 3d 963, 971 (N.D. Ill. 2016) (claims not inventive where they are "directed to a generic solution to the problem the inventors identified, and [ ] claim[ ] a method and system based on well-understood, generic components that behave as expected and communicate with each other in standardized ways"), *aff'd* 680 F. App'x 1009 (Fed. Cir. 2017).

Here, as in these cases, the asserted claims recite the use of conventional components for their conventional purposes. Namely, they recite using the internet to transmit data, using cameras to capture images, using dart machines to play darts, and using a display to display information. R. 1-1 cols. 6-8.

In support of its contrary argument that the claims describe unconventional components used in an unconventional fashion, Gaelco points to two elements: (1) the patent's description of a digital video camera that is "equipped with filters, reflective elements and electronic equipment" so that it "can simultaneously capture images from different sources and with varied, changing lighting," R 1-1 col. 4; and (2) the patent's description of a visible light emitter to "mark[ ] the minimum regulatory distance of the position of the player . . . throwing the dart," *id.* col. 5.

There are two problems with Gaelco's argument. *First*, both of these elements are described in the '083 patent specification (*i.e.*, the section titled "Detailed

Description of the Invention")—not in the asserted claims. And "[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (collecting cases); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("fact that certain algorithms are disclosed in the specification does not change the outcome"; rather, the § 101 inquiry "must focus on the claims").

*Second*, even if the two elements of the specification relied on by Gaelco were read into the claims, that would not change the result. "[L]ooking more precisely at what the claim elements add" as required at step two, *Electric Power*, 830 F.3d at 1353, courts have found that claims do not contain an inventive concept where none of their individual elements recites inventive technology. *See, e.g.*, *id.* at 1355 (finding at step two that the claims did "not invoke any assertedly inventive programming"); *Alice*, 134 S. Ct. at 2359 (finding at step two that "[t]he method claims do not, for example, purport to improve the functioning of the computer itself. Nor do they effect an improvement in any other technology or technical field.") (internal citations omitted); *O2 Media*, 149 F. Supp. 3d at 996 (finding at step two that "[t]he patent does not claim the [underlying] software or equipment" at issue).

Here, as explained above, Gaelco admitted at oral argument that there is no special machinery or technology involved in Gaelco's asserted claims. Gaelco nowhere claims to have invented the camera with filters and reflective elements

and the visible light emitter recited in the specification. Accordingly, the specification's recitation of these elements is not an inventive concept.

Gaelco further argues that the ordered combination of steps described in the claims solves an important problem and improves on the prior art. Gaelco says the claims "recite a specific combination of hardware and a specific series of method steps performed using that hardware to accomplish a task that was *impossible* prior to the invention of the Asserted Patent: allowing a referee to monitor and enforce rules for a competition involving physical actions by players located in geographically distant location from the referee and/or one another." R. 21 at 15. But the Federal Circuit has rejected the argument that an "inventive concept arises from the ordered combination of . . . steps" where the steps "are recited in the ordinary order." *TDE Petroleum Data Sols., Inc. v. AKM Enter., Inc.*, 657 F. App'x 991, 993 (Fed. Cir. 2016), *cert denied*, 137 S. Ct. 1230 (2017). Here, the steps of remote refereeing through data collection, analysis, and display are recited in the ordinary order (*i.e.*, the same order that occurs when a professional sports game is remotely refereed).

Furthermore, whether Gaelco's claims are novel as compared to the prior art is not the pertinent issue in a § 101 analysis. *See Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("the 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter"). And courts have made clear that providing benefits over the prior art—including by

adding new steps or adding efficiency—does not by itself provide a sufficient inventive concept or confer patent-eligible subject matter. *Ultramercial*, 772 F.3d at 716 ("That some of the eleven steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("Nor, in addressing the second step of *Alice,* does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept.").

For these reasons, the Court finds that the asserted claims do not "contain[ ] an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application" under § 101. *See Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted).

## Conclusion

For all of the reasons explained above, the Court grants Arachnid's motion to dismiss (R. 19).

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: December 21, 2017